J-S19044-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| EARL LOUIS HOLLINS | : | |
| | : | |
| Appellant | : | No. 939 WDA 2025 |

Appeal from the PCRA Order Entered July 11, 2025
In the Court of Common Pleas of Beaver County Criminal Division at
No(s): CP-04-CR-0002638-2015

BEFORE: SULLIVAN, J., NEUMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED: August 10, 2026**

Appellant Earl Louis Hollins appeals from the order entered by the Court of Common Pleas of Beaver County denying Appellant's petition pursuant to the Post Conviction Relief Act (PCRA).[1] After careful review, we affirm.

The factual background of this case was previously summarized as follows:

> This case arises from the shooting of a Harmony Township Police officer. At trial, the Commonwealth presented the testimony of Alan Loskoch ("Officer Loskoch"). The officer was on direct patrol during the early hours of October 28, 2015. As he drove in his unmarked vehicle between the time of 3:30 a.m. and 3:47 a.m., Officer Loskoch noticed Appellant on Beaver Road jiggling the passenger door handle of a parked vehicle. Officer Loskoch approached Appellant with his vehicle coming within five to six feet. At this time the officer rolled down his window, identified himself as a police officer and asked Appellant what he was doing.

---

[*] Former Justice specially assigned to the Superior Court.
[1] 42 Pa.C.S.A. §§ 9541-9546.

Officer Loskoch observed Appellant to be wearing a black hoodie with lettering, and gray tapered sweatpants.

After the officer identified himself, Appellant stepped away from the parked vehicle and walked in the direction of the officer's vehicle. Officer Loskoch observed that Appellant's hands were concealed and ordered Appellant to show his hands repeatedly. Appellant ignored said requests and instead turned to face Officer Loskoch. The officer testified that, at this point, he was able to get a good look at the individual, describing him as a light-skinned black man, unkempt hair, skinny in nature, and approximately six-foot-tall. Officer Loskoch defined the individual's facial features to be thin.

As Appellant turned, he pulled a firearm and opened fire at Officer Loskoch's vehicle. One bullet struck the officer in the chest, approximately two inches above his left nipple. But for the officer wearing a ballistic vest, there was no penetration of the chest cavity. Officer Loskoch then radioed emergency services and reported shots fired. Concurrently, Appellant moved across the front of the officer's vehicle and continued to shoot. Appellant was illuminated by the officer's vehicle headlights and the immediate street lights. Officer Loskoch then fired five shots through the windshield of his vehicle. As the officer returned fire, Appellant fled northward. Officer Loskoch later passed out as his car drifted forward into a lot.

Emergency services eventually secured the officer and he was transported to Allegheny General Hospital. During an interview at the hospital, Officer Loskoch identified the shooter as "Earl Hollins" and explained to law enforcement that he had multiple encounters with this individual in the past.

Officer Loskoch later testified to previous encounters with Appellant. One such encounter was a traffic stop in July of 2015, less than three months prior to the shooting. Officer Loskoch stopped to assist a Baden police officer who had pulled over a vehicle with his weapon drawn. Appellant was removed from the vehicle, and Officer Loskoch engaged in conversation with him after he was placed in a squad car. The officer talked to Appellant for approximately five to ten minutes. A second encounter occurred during the execution of a search warrant in Ambridge, where Officer Loskoch observed Appellant standing on Kerr Street.

The Commonwealth additionally presented the testimony of Casey Pelton. Both Mr. Pelton and Appellant were held in

confinement at the Beaver County Jail in September 2016. Both were housed on A Block. Eventually, Appellant discussed the shooting of October 28, 2015 with Mr. Pelton. He told Mr. Pelton that he was looking to rob someone, but didn't find anyone so he decided to start breaking into cars. Appellant then explained how an officer drove up on him and that he started to shoot and run away from the officer. Appellant further indicated that he hit the officer around the left side of the chest. He later told Mr. Pelton that he gave the gun to his "baby mom and his cousin" to dispose of.

Appellant's defense at trial relied primarily on an alibi defense by presenting the testimony of his mother, father, sister, and a friend named Gregory Barger. Appellant's parents testified that on the night of the shooting their son was at home with them the entire night. The family also stated that Mr. Barger had been at the home twice that day. Mr. Barger's testimony was consistent with that of the family, and he added that he was able to recall his presence at the Hollins home on October 27, 2015, because he recalled receiving a trespass citation that same day. However, the Commonwealth was able to locate the citation and confronted Mr. Barger with a copy of it and was acknowledged by Mr. Barger as the one had received. The citation was for October 25, 2015.

PCRA Court Opinion (P.C.O.), 9/25/26, at 4-8 (citations omitted).

Appellant was charged with the shooting of Officer Loskoch and proceeded to a jury trial. On September 15, 2017, a jury convicted Appellant of Aggravated Assault (Serious Bodily Injury), Aggravated Assault (Law Enforcement), Attempted Murder, Aggravated Assault (Bodily Injury), Aggravated Assault (Deadly Weapon), Firearms Carried Without a License, Simple Assault, and Reckless Endangerment of Another Person.

On November 29, 2017, the trial court imposed an aggregate sentence of twenty-three (23) to forty-six (46) years' imprisonment. Appellant filed a timely post-sentence motion which the trial court denied. This Court affirmed the judgment of sentence on July 1, 2019 and our Supreme Court denied

Appellant's petition for allowance of appeal on January 23, 2020. **See Commonwealth v. Hollins**, 682 WDA 2018, 2019 WL 2749507 (Pa. Super. July 1, 2019) (unpublished memorandum), *appeal denied*, 656 Pa. 710, 223 A.3d 667 (Pa. 2020).

On March 10, 2021, Appellant filed a *pro se* document asking for an extension to file a PCRA petition as his prior counsel had informed him he would not continue to represent him after the direct appeal process. Appellant expressed his desire to file a PCRA petition, but expressed frustration in attempting to do so *pro se* as he admitted that he "did not know what [he was] doing" and had little time in the prison law library.

On October 28, 2021, Appellant filed a *pro se* PCRA petition requesting the reinstatement of his right to file a PCRA petition *nunc pro tunc*, averring that he was indigent and entitled to the appointment of counsel to represent him in filing his first PCRA petition.[2] Appellant asserted that the PCRA court should have appointed counsel in response to his March 10, 2021 filing.

After receiving no response from the PCRA court to either of his *pro se* filings, Appellant retained Attorney Patrick K. Nightingale, who entered his appearance and filed various motions for extensions of time to file an amended PCRA petition on Appellant's behalf. Atty. Nightingale asserted that Appellant's March 10, 2021 and October 28, 2021 pro se filings should be

---

[2] "A convicted defendant has a right under the Rules of Criminal Procedure to the assistance of counsel on a first PCRA petition." **Commonwealth v. Miranda**, 317 A.3d 1070, 1075 (Pa.Super. 2024) (citation omitted).

construed as timely filed PCRA petitions. The PCRA court agreed and granted Atty. Nightingale's motions for extension to file an amended PCRA petition.

On September 22, 2023, Atty. Nightingale filed an amended PCRA petition on Appellant's behalf in which he claimed that trial counsel was ineffective in failing to call an expert witness to question the reliability of Officer Loskosh's eyewitness identification. On March 4, 2024, the PCRA court held an evidentiary hearing at which Appellant presented multiple witnesses including Dr. Margaret Reardon, Ph.D., a psychologist qualified as an expert in eyewitness identification, who testified regarding different factors that should be considered in determining whether eyewitness testimony is reliable.

On July 11, 2025, the PCRA court entered an order dismissing Appellant's petition. On July 18, 2025, Appellant filed a motion for reconsideration, which was denied by the PCRA court on the same date.

Appellant filed a timely notice of appeal and complied with the PCRA court's direction to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises the following issues for our review on appeal:

I. Did the trial court err when it denied Appellant's claim that trial counsel was ineffective for failing to call an expert witness relative to the reliability of the eyewitness identification testimony off [sic] Officer Loskosh?

II. Did the trial court err when it denied Appellant's claim that trial counsel was ineffective for failing to present evidence that would demonstrate that Appellant could not have walked the five miles from his residence to the scene of the shooting at 4:00 a.m. and back again?

Appellant's Brief, at 9.[3]

We address the propriety of the PCRA court's denial order as follows:

[O]ur standard of review from the denial of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

*Commonwealth v. Miranda*, 317 A.3d 1070, 1075 (Pa.Super. 2024)

(citation omitted).

In reviewing a claim of ineffectiveness of counsel, we are guided by the following principles:

It is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error. *See Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975–76 (1987); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The PCRA court may deny an ineffectiveness claim if "the petitioner's evidence fails to meet a single one of these prongs." *Commonwealth v. Basemore*, 560 Pa. 258, 744 A.2d 717, 738 n.23 (2000).... Because courts must presume that counsel was effective, it is the petitioner's burden to prove otherwise. *See Pierce*, *supra*; *Commonwealth v. Holloway*, 559 Pa. 258, 739 A.2d 1039, 1044 (1999).

_____

[3] We note with displeasure that the Commonwealth failed to file an appellate brief in this case or respond to this Court's briefing notice, especially in a case where a police officer was shot and the safety of a police officer was compromised.

*Commonwealth v. Johnson*, 179 A.3d 1105, 1114 (Pa.Super. 2018) (quoting *Commonwealth v. Natividad*, 598 Pa. 188, 207-208, 938 A.2d 310, 321 (2007)).

In addition, a petitioner must show that the claims of error have not been previously litigated or waived. 42 Pa.C.S.A. § 9543(a)(3). An issue has been waived "if the petitioner could have raised it but failed to do so before trial, at trial, on appeal or in a prior state post[-]conviction proceeding." 42 Pa.C.S.A. § 9544(b). An issue has been previously litigated if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue." 42 Pa.C.S.A. § 9544(a)(2).

First, Appellant claims that trial counsel was ineffective for failing to call an expert witness to question the reliability of the eyewitness identification testimony of Officer Loskosh. We note that previous Pennsylvania precedent found such testimony to be inadmissible on the basis that it provided an "unwarranted appearance of authority" that invaded the factfinder's role in assessing credibility. *See Commonwealth v. Simmons*, 541 Pa. 211, 662 A.2d 621, 631 (1995). However, Appellant cites to our Supreme Court's decision in *Commonwealth v. Walker*, 625 Pa. 450, 92 A.3d 766 (2014) which removed the rule of *per se* inadmissibility of such testimony.

As an initial matter, we note that the PCRA court found this claim was previously litigated on direct appeal. On direct appeal, this Court affirmed the trial court's decision to deny Appellant's request for the retention of a private investigator to locate and interview witnesses and review documentary

- 7 -

evidence; this Court incorporated the trial court's analysis as the basis for our decision. **Hollins**, 682 WDA 2018, 2019 WL 2749507, at *4 (citing Trial Court Opinion, 4/10/18, at 8-12). Based on this finding, the PCRA court reasoned that Appellant could not now argue that "counsel was ineffective in failing to produce an expert witness" as this issue was previously litigated. We disagree.

This Court's decision upholding the trial court's refusal to authorize funding to the defense for a private investigator is a completely different issue than Appellant's claim that trial counsel was ineffective in failing to present expert testimony regarding factors that may affect the reliability of eyewitness testimony, an argument which was not reviewed on direct appeal. This Court's decision to uphold the trial court's discretion in refusing the defense's request to appoint a private investigator does not constitute a finding that Appellant was precluded from requesting any further expert witnesses.

As such, the PCRA court erred in dismissing this claim as previously litigated. In similar circumstances, our Supreme Court has held that it is not necessary to remand to the PCRA court for further consideration unless "we find that the claims that were considered 'previously litigated' by the PCRA court are in need of further elucidation and cannot be evaluated by this court." **Commonwealth v. Collins**, 585 Pa. 45, 61–62, 888 A.2d 564, 573–74 (2005). **See also Commonwealth. v. Carson**, 590 Pa. 501, 526, 913 A.2d 220, 234 (2006) (finding it unnecessary to remand to PCRA court for a substantive analysis of ineffectiveness claims that were incorrectly determined

to be previously litigated as such claims "plainly fail"). In this case, we need not remand to the PCRA court as we may review the merits of Appellant's claim which clearly fails for other reasons.

Our Supreme Court has established it is within the trial court's discretion to decide whether to allow the admission of expert testimony on relevant factors that may influence eyewitness identification by impacting the reliability of a witness's memory and ability to identify a perpetrator; the trial court's decision is "subject to an abuse of discretion appellate standard of review." *Walker*, 625 Pa. at 485-86, 92 A.3d at 788.

The Supreme Court acknowledged in *Walker* that the expert testimony on factors that may influence eyewitness identifications could potentially assist the fact finder in understanding the evidence presented as "the potential fallibility of eyewitness testimony is 'beyond the knowledge possessed by the average layperson.'" *Id.* at 487, 92 A.3d at 789 (quoting Pa.R.E. 702). The *Walker* Court envisioned the limited admissibility of such expert testimony in circumstances where it is relevant, more specifically, where the prosecution's case is "solely or primarily dependent on eyewitness testimony." *Walker*, 625 Pa. at 485, 92 A.3d at 787. The *Walker* Court then emphasized: "[t]rial courts will exercise their traditional role in using their discretion to weigh the admissibility of such expert testimony on a case-by-case basis. It will be up to the trial court to determine when such expert testimony is appropriate." *Id.* at 492, 92 A.3d at 792.

The **Walker** Court noted that factors that could potentially affect the reliability of eyewitness testimony included identifications made in highly stressful or traumatic circumstances, identifications made where the witness's focus is distracted by the threat of a weapon, cross-racial identifications, "the risk of mistaken identification when police investigators do not warn a witness, prior to viewing a photo array or line up, that the perpetrator may or may not be in the display; and the lack of correlation between witness statements of confidence and witness accuracy." **Id.** at 488, 92 A.3d at 789.

In this case, Appellant argues that trial counsel's ineffectiveness in failing to present expert testimony on this topic "deprived the jury of an opportunity to hear *why* they should receive [Officer] Loskosh's identification with caution." Appellant's Brief, at 22 (emphasis in original). Appellant argues that Officer Loskosh's identification was the single most important piece of evidence in this case and expert testimony would have highlighted that Officer Loskosh made this cross-racial identification in a highly stressful situation in which his focus was distracted by the danger of a firearm being pointed at him. As Appellant claims that no other direct evidence linked Appellant to the shooting, trial counsel's failure to offer expert testimony regarding witness identification resulted in prejudice.

The instant case can be distinguished from the facts of **Walker** in which there was no direct evidence of Walker's guilt other than the identifications of eyewitnesses who were robbed at gunpoint by an individual that they did not recognize or know. Multiple factors were identified that could have possibly

affected the reliability of their identifications. The eyewitnesses in **Walker** made cross-racial identifications of the unknown suspect under stressful circumstances in which their focus was on a firearm pointed at them. Officers who presented the eyewitnesses with photo arrays did not inform the witnesses that a photo of their assailant may or may not have been included in the array. Further, one of the eyewitnesses who equivocated about her identification of Appellant during the array and a lineup then confidently declared that Appellant was the robber at trial.

In this case, Officer Loskosh testified that he had ample opportunity to observe the suspicious individual that appeared to be attempting to break into a parked vehicle and subsequently approached Officer Loskosh's vehicle. Before the encounter escalated after the assailant pulled out a firearm, Officer Loskosh "got a good look" at the individual's face and gave a detailed description of the man as a light-skinned black man with a very thin facial structure, sunken cheek bones, and unkempt hair who was approximately six-foot-tall with a very thin stature wearing a dark colored hooded sweatshirt with lettering on it and skinny sweatpants. Notes of Testimony (N.T.), 9/12/17, at 21-23, 43.

Once the assailant fired his weapon and hit Officer Loskosh, the individual fled. When other officers responded to assist Officer Loskosh and placed him in an ambulance, Officer Loskosh repeatedly told them that he knew his assailant from somewhere and recalled having "run-ins" with the assailant at some point. *Id.* at 47-48. Officer Loskosh was subsequently able

to identify the shooter as Appellant and discuss two specific and separate instances in which he had encountered Appellant in the past. Further, Appellant's appearance was consistent with Officer Loskosh's description of the shooter and Officer Loskosh never wavered in his identification of Appellant as his assailant.

Based on these facts, we find that Appellant failed to show how he was prejudiced by trial counsel's failure to present expert testimony on the topic of eyewitness identification, as he has not shown a reasonable probability of a different outcome in this case. Unlike the facts of *Walker* where the eyewitnesses held up at gunpoint attempted to identify their attacker who was a total stranger, Officer Loskosh recognized Appellant but initially could not recall where he had encountered him. Officer Loskosh had ample opportunity to observe his assailant to be able to give a detailed description of the shooter's appearance. Officer Loskosh ultimately was able to identify Appellant from his prior interactions with Appellant in the local area under non-stressful circumstances. Further, Officer Loskosh's testimony was not the sole evidence linking Appellant to the shooting. Rather, Casey Pelton, who was housed with Appellant at the Beaver County Prison, testified as to details Appellant told him about his involvement in the shooting in this case. As such, this ineffectiveness claim fails.

Appellant also claims that trial counsel was ineffective for failing to present evidence that would demonstrate Appellant could not have walked to

the scene of the shooting, which was five miles from his residence, and back home again at 4:00 a.m.

We begin by noting that Appellant's amended PCRA petition does not include this claim and the PCRA court did not analyze or discuss this issue in its opinion filed pursuant to Pa.R.A.P. 1925(a). However, Appellant's amended petition contained in the certified record appears to be not a complete document; the amended petition states that it contains multiple "claims," identifies Appellant's ineffectiveness claim related to expert testimony as "Count 1," appears to have included a truncated analysis of Count 1, and does not include a conclusion or signature. On June 3, 2024, the PCRA court ordered an evidentiary hearing on the "claims" in the amended PCRA petition and allowed Appellant to offer testimony on this particular claim at the PCRA hearing.

Pennsylvania Rule of Criminal Procedure 902 requires a PCRA petitioner to state in the petition the relief requested and the grounds upon which the relief is requested. Pa.R.Crim.P. 902(A)-(B). Nevertheless, Pennsylvania Rule of Criminal Procedure 905 provides, in relevant part, that the PCRA court "may grant leave to amend or withdraw a petition for post-conviction collateral relief at any time. Amendment shall be freely allowed to achieve substantial justice." Pa.R.Crim.P. 905(A). **See e.g. Commonwealth v. Dennis**, 597 Pa. 159, 950 A.2d 945, 959 n. 11 (2008) (where a PCRA court considers supplemental materials not included in the original PCRA petition, such supplements may be deemed part of the original PCRA petition for the purpose

of review). As the PCRA court and the parties proceeded at the evidentiary hearing as if Appellant had included this claim in his PCRA petition, we will review the merits of his argument on appeal.

Specifically, Appellant claims trial counsel was ineffective in failing to attempt to show Appellant did not drive, have a driver's license, or have access to a vehicle. Appellant maintained that he utilized a man named Fred Rotondo, a family friend, for transportation purposes and that Mr. Rotondo had an alibi for his whereabouts during the shooting. Appellant contends these points show that he would have had to walk to and from the scene of the shooting (which was five miles from Appellant's house in Aliquippa) in the early morning hours. Based on these arguments, Appellant asserts that "the idea that Appellant could have shot Officer Loskosh and made it back to Aliquippa on foot and completely unobserved by the massive law enforcement reaction to the shooting of Officer Loskosh is simply unbelievable." Appellant's Brief, at 27.

However, Appellant has not shown that he was prejudiced by trial counsel's failure to pursue this defense at trial. As noted above, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." ***Commonwealth v. Spotz***, 624 Pa. 4, 33–34, 84 A.3d 294, 312 (2014) (citations omitted).

Even if trial counsel made an effort to present testimony showing that Appellant did not have a driver's license and did not drive, we do not agree with Appellant's suggestion that these points proved that the only way for Appellant to have traveled to and from the shooting scene in Harmony Township was to *walk* five miles home to Aliquippa. While Appellant and his family testified that Mr. Rotondo typically provided transportation to Appellant and his family, this testimony does not foreclose the possibility that another individual could have transported Appellant to and from the shooting scene. Trial counsel also admitted that he did not think it was essential to show Appellant did not have a license as he acknowledged that people often times drive without having a license.

Moreover, Appellant's mother, with whom Appellant lived, admitted that officers did not come to her house looking for Appellant until 10:30 p.m. that evening, which was approximately 19 hours after the shooting occurred. When asked if this time period was sufficient for Appellant to walk five miles home, Appellant's mother responded that Appellant would not do that.

In light of the evidence presented at trial, we find that Appellant has failed to show a reasonable probability that, but for counsel's failure to show that Appellant did not have a driver's license or did not typically drive, the result of the proceedings would have been different.

For the foregoing reasons, we affirm the PCRA court's order dismissing Appellant's petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE: 08/10/2026